UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kozacky & Weitzel, P.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 2246 |
| v. ) | |
| ) | Hon. Matthew F. Kennelly |
| United States of America, Department of the ) | |
| Treasury – Internal Revenue Service, ) | |
| ) | |
| Respondent. ) | |

**MOTION FOR EXTENSION OF TIME TO RESPOND AND TO
COMPEL PRODUCTION OF A *VAUGHN* INDEX AND DISCOVERY**

The IRS's motion for summary judgment, supporting affidavits and August 20, 2007 letter from Gerald A. Role, Esq. (filed October 15, 2007, Docket Nos. 15-17) provide a woefully inadequate basis for plaintiff to effectively respond to the IRS's motion for summary judgment and to cross-move for summary judgment. Accordingly, plaintiff respectfully requests this Court compel the IRS to create a *Vaughn* index and compel the IRS to respond to plaintiff's interrogatories which were propounded on July 13, 2007, a copy of which is attached hereto as Exhibit A. In addition, plaintiff requests that the Court adjust the summary judgment schedule (Docket No. 14) accordingly.

**Facts**

On November 3, 2006 the IRS issued two letters to Rodney R. and Heidi M. Kirby informing them that they had participated in a "tax shelter transaction" and/or an "abusive transaction." (Answer, ¶ 4.) Similar letters were issued to numerous taxpayers around the country. (Answer, ¶ 5.) Such accusations stem from an internal IRS document signed by twenty-one top executives of the IRS which outlines a program or policy designed to capture as "tax

shelter transactions" or "abusive transactions" business bad debt deductions that had been recognized as lawful since at least 1954. (Complaint, ¶ 13.) The accusations directed towards the Kirbys, other taxpayers around the country and their businesses have resulted in litigation pending in fifteen judicial districts, most of which are currently the subject of a motion to transfer to this judicial district before the Judicial Panel on Multidistrict Litigation, as well as United States Tax Court litigation.

On December 28, 2006 plaintiff, on behalf of the Kirbys, submitted a request pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, requesting "[a]ll documents prepared and/or considered by the Department of the Treasury that led to the November 3, 2006 letters to Rodney R. And Heidi M. Kirby." (Complaint, ¶ 8; Answer, ¶ 8.) The IRS responded by enclosing a copy of the Kirbys' 2003 and 2004 tax files and considered that a "full grant of [their] request." (Complaint, ¶¶ 9-10; Answer, ¶¶ 9-10.) Thereafter, on February 7, 2007, plaintiff filed a second FOIA request specifically seeking "any internal memoranda, administrative orders or any other agency documents that may indicate reasons why Rodney R. and Heidi M. Kirby were accused of such transactions." (Answer, ¶¶ 12-13.) Plaintiff was specifically looking for the *twenty-one executive sign-off*, noting in its request that "[i]t is our understanding that responsive documents exist, including, but not limited to a document which IRS executives signed off on generally concerning the aforestated subjects." (Complaint, Exhibit D.) Apparently, such clarification was necessary because the IRS's initial search for responsive documents was limited to the contents of the Kirbys' tax files. (Answer, ¶ 11.)

On March 9, 2007 plaintiff was informed that the IRS would be unable to respond during the statutory period. (Complaint, ¶ 15.) Based upon the IRS's failures to adequately and

timely comply with plaintiff's first two FOIA requests and with similar unrequited FOIA requests sent by Janessa Griffin, Esq. (*see* Complaint, ¶ 17 & Group Exhibit F), plaintiff elected to sue for production of the documents, and the complaint *sub judice* was filed on April 24, 2007.

Subsequent to the commencement of the lawsuit, the IRS uncovered an "additional 95 pages of documents responsive to [plaintiff's] Freedom of Information Act request." (*See* August 20, 2007 letter from Gerald A. Role, Esq. attached hereto as Exhibit B). Ten pages were released in part and two pages in whole. As evidenced by the attachments to Exhibit B, the ten pages released to taxpayers have been redacted to the point they provide virtually no information. The remainder of the documents were withheld pursuant to FOIA exemptions three and five. The IRS provided even less information in its responses to plaintiff's interrogatories as it objected to every interrogatory. A true and correct copy of the IRS's responses to plaintiff's first set of interrogatories is attached hereto as Exhibit C.

Finally, on October 15, 2007, the IRS filed its motion for summary judgment, complete with the declarations of Melissa C. Quale, Margaret Keller and Gerald A. Role, Esq. Paragraphs ten and nineteen of Quale's declaration provide the only guidance to plaintiffs as to what was redacted from the ten pages provided to the plaintiffs with Gerald Role's letter and what is contained in the eighty-three withheld pages. (Quale Declaration, ¶¶ 10, 19; *see also*, Exhibit B.) Inconsistently, Quale's declaration claims that the only two pages produced to plaintiff in their entirety with Gerald Role's letter were exempt pursuant to FOIA exemption three. (*Compare* Quale Declaration, ¶ 10 (exempting bates stamp numbers 000605-606) *with* Exhibit B (producing 000605-606).)

### Discussion

At first, the IRS claimed to be without knowledge or information sufficient to form a belief as to plaintiff's allegations regarding the *twenty-one executive sign-off*. (Answer, ¶ 13.) At present, however, this document appears to be withheld pursuant to the IRS's "deliberative process" privilege. (Quale Declaration, ¶¶ 13-20.) In furtherance of its efforts to indefinitely stall and withhold from plaintiff the documents it seeks and requires, namely the *twenty-one executive sign-off*, and to have this matter and all related matters "summarily dismissed," the IRS has improperly withheld information from plaintiff, contradicted itself, submitted inadequate affidavits and failed to comply with the Federal Rules of Civil Procedure. Therefore, plaintiff respectfully requests this Court compel the IRS to prepare a *Vaughn* index and compel the IRS to respond to outstanding discovery. In addition, plaintiff requests that the summary judgment schedule be adjusted accordingly.

### I. THE IRS SHOULD BE REQUIRED TO SUBMIT A *VAUGHN* INDEX

In response to mounting concerns in FOIA cases that "existing customary procedures foster inefficiency and create a situation in which the Government need only carry its burden of proof against a party that is effectively helpless and a court system that is never designed to act in an adversary capacity," the court in *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), adopted an indexing requirement, now more commonly referred to as a *Vaughn* index. The *Vaughn* court's holding has had a profound impact on FOIA cases and on the rights of citizens to monitor government activity as guaranteed by, among other things, the United States Constitution. *See Founding Church of Scientology of Washington, D.C., Inc. v. Bell*, 603

F.2d 945, 947 (D.C. Cir. 1979) ("the Vaughn index is critical to effective enforcement of FOIA").

"A *Vaughn* index is a detailed index itemizing each item withheld by the government, the exemptions the government is claiming for those items, and the reasons why the exemptions apply to those items." *Providence Journal Co. v. United States Dept. of the Army*, 769 F. Supp. 67, 68 (D.R.I. 1991) (*citing Lykins v. United States Dept. of Justice*, 725 F.2d 1455, 1463 (D.C. Cir. 1984)). The index primarily serves three purposes:

> 1) it forces the government to carefully scrutinize the material it wishes to withhold; 2) it enables the trial court to have a basis upon which to rule on the applicability of the FOIA exemption claimed, and 3) it "enables the adversary system to operate by giving the requestor as much information as possible, on the basis of which he can present his case to the trial court."

*Id.* (*quoting Lykins*, 725 F.2d at 1463). While, typically, "rules of discovery give each party access to the evidence upon which the court will rely in resolving the dispute" in a FOIA case, "because the issue is whether one party will disclose documents to the other, only the party opposing disclosure will have access to all of the facts." *Id.* "This lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system[]." *Wiener v. F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991) (*quoting Vaughn*, 484 F.2d at 824)). Accordingly, the primary "purpose of the index is to afford the FOIA requestor a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Id.* (*quoting King v. United States Dept. of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987)).

The necessity of compelling the IRS to prepare a *Vaughn* index is apparent here. Initially, according to the IRS, a search for "[a]ll documents prepared and/or considered by the Department of the Treasury that led to the November 3, 2006 letters to Rodney R. And Heidi M. Kirby" was satisfied by regurgitating the Kirbys' 2003 and 2004 tax returns. Only after being prodded with a second FOIA request, delineating that "all documents" actually includes "any internal memoranda, administrative orders or any other agency documents that may indicate reasons why Rodney R. and Heidi M. Kirby were accused of such transactions," did the IRS apparently conduct the indicated search. Rather than wait the years that Janessa Griffin, who requested similar documents for related matters, had to wait (*see* Complaint, Group Exhibit F), plaintiff filed this lawsuit upon expiration of the IRS's statutorily allotted time to produce such documents. A lawsuit was apparently required insofar as, subsequent to the commencement of the lawsuit, the IRS, through one of its attorneys, Gerald A. Role, Esq. informed plaintiff that it had "located an additional 95 pages of documents responsive to [its] Freedom of Information Act request." (Exhibit B.)

Of the additional ninety-five documents found, however, only two pages were produced to plaintiff in full and ten in severely redacted form. Explanations for the remaining eighty-three pages of withheld documents were summed up in two paragraphs of Quale's declaration. (Quale Declaration, ¶¶ 10, 19.) For example, in summing up the documents withheld pursuant to FOIA exemption 5, Quale notes they "include an unreviewed draft outline of points for consideration used internally by IRS employees working on distressed asset/debt transactions." (Quale Declaration, ¶ 19.) Do they "include" anything else? What "points" are being "consider[ed]?" What "employees" received the "draft outline?" Such was the explanation

6

offered for twenty-four pages of "documents responsive to [plaintiff's] Freedom of Information Act requests." (Exhibit B.)

Quale's other explanations are equally lacking in substance and detail. Vague, sweeping, non-specific and conclusory affidavits, which merely recite statutory standards, are insufficient and warrant the creation of a detailed *Vaughn* index. *See King*, 830 F.2d at 219 ("specificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping'").

Quale's declaration is especially inadequate given that it makes no effort to include the number of IRS executives issuing the responsive documents. Plaintiff's complaint clearly alleged that "21 top executives of the IRS signed off on a program or policy designed to capture as 'tax shelter transactions' or 'abusive transactions' business bad debt deductions that had been recognized as lawful since at least 1954." (Complaint, ¶ 13.) Suffice it to say that, if one of these withheld documents is signed by twenty-one top Treasury executives, plaintiff's allegations become a lot more difficult to deny.

In addition, Quale's affidavit is incomplete and contradictory. The ninety-five pages of responsive documents are bates labeled 578-683. Bates label 619 was apparently withheld from plaintiff; however, Quale makes no effort to offer even a minimal explanation as to what it is or what exemption it is withheld pursuant to. Furthermore, the document bates labeled 605-06 is a memorandum issued by John Petrella, Industry Director, LMSB, HMT, regarding "Distressed Asset/Debt Cases." It was produced in its entirety by Gerald Role in his August 20 letter. (Exhibit B.) According to Quale, however, it is exempt pursuant to FOIA exemption three.

7

(Quale Declaration, ¶ 10.) "[U]nwieldy" and "confusing" IRS affidavits regarding FOIA exemptions are insufficient and warrant the creation of a detailed *Vaughn* index. *See Bell*, 603 F.2d at 948 (holding government affidavits were "unwieldy [and] frequently confusing" because they, among other things, claimed different exemptions for the same document, altered statements in later affidavits, and offered insufficient justification for withholding many documents). As such, this Court should deem these affidavits insufficient and require the creation of a *Vaughn* index.

In order to enable plaintiff to effectively litigate this matter, plaintiff requests the *Vaughn* affidavit contain at least the following information:

- Name of the document;

- Number of pages and corresponding bates labels;

- Date of the document;

- Department issuing or originating the document;

- Reason the document originated or issued;

- Whether the document specifically or indirectly references or pertains to the Kirbys or John E. Rogers in any manner;

- Whether any follow up documentation or correspondence exists, the bates labels of such documents (or, if such documents were not included in the ninety-five pages produced by Gerald Role a detailed description of the document and the reason it was not included);

- A detailed description of the document, including all of the documents major points and authorities and all references to "abusive transactions," "distressed asset and debt transactions," or other similar tax shelter transactions of which the Kirbys and similarly situated taxpayers have been accused;

- The reason the IRS felt such document was responsive to plaintiff's request;

- For documents withheld in their entirety, why the IRS deemed that the entire document was exempt, or, in the case of redacted documents, why so much of them were redacted;

- The number of IRS personnel signing the document, issuing the document, or responsible in any way for the document's production, including their titles and respective contributions to the document;

- Any other information this Court deems necessary and appropriate.

Only by imposing these requirements can the taxpayers be assured of their rights and this Court be invested with the information required to make the appropriate decision.

## II. THE IRS SHOULD BE COMPELLED TO RESPOND TO PLAINTIFF'S DISCOVERY REQUESTS

"Discovery in a FOIA action is permitted in order to determine whether a complete disclosure of documents has been made and whether those withheld are exempt from disclosure." *Local 3, I.B.E.W., AFL-CIO v. N.L.R.B.*, 845 F.2d 1177, 1179 (2d Cir. 1988). "[T]he essence of [an action to compel discovery] is to determine whether a party has a right to receive the agency documents." *Id.* As such, discovery is appropriate unless "[t]he agency's affidavits [are] relatively detailed' and nonconclusory and . . . submitted in good faith." *Simmons v. United States Dept. of Justice*, 796 F.2d 709, 711-12 (4th Cir. 1986). Here, discovery is necessary to determine whether an adequate search was conducted, whether the withheld documents are truly exempt from disclosure, and whether affidavits submitted by the IRS in support of its motion for summary judgment are sufficient.

Moreover, according to the IRS's own objections to these interrogatories, discovery is appropriate at this phase of the litigation. Plaintiff propounded interrogatories on the IRS on July 13, 2007. On August 15, 2007 the IRS objected to each and every interrogatory with

9

the same objection. (Exhibit C.) According to the IRS, "discovery . . . is generally inappropriate in FOIA cases." (Exhibit C.) This overbroad generalization of discovery in a FOIA case is no longer relevant, however, as circumstances have changed drastically since the IRS's objections. Specifically, plaintiff's received Gerald Role's letter informing them that ninety-five pages of additional responsive documents exist (Exhibit B) and the IRS filed its motion for summary judgment, complete with Margaret Keller's and Melissa Quale's declarations. The IRS even contemplated in its objections to the interrogatories that such changes in the course of litigation give rise to a right to discovery, noting:

> Discovery is only appropriate when the plaintiff raises questions regarding the adequacy and scope of the agency's search for records responsive to the FOIA requests. . . Permissible discovery regarding these factual issues should take place, if at all, only after the government moves for summary judgment and submits its supporting affidavits and memorandum of law, and the Court has reviewed the motion and made a determination as to whether the information supplied by the government is sufficient for it to make a ruling.

(Exhibit C.) Both circumstances contemplated by the IRS are present here: plaintiff has raised questions regarding the adequacy and scope of the agency's search for records (specifically, the agency's initial search for "all documents" was limited to the taxpayers' individual files and it took litigation to unearth ninety-five pages of additional responsive documents) and the IRS has moved for summary judgment.

Furthermore, discovery is appropriate because the Quale and Keller declarations are not specific and are conclusory as to why each exemption applies to each document. In two paragraphs of her declaration, Quale summarizes the ninety-three pages of withheld or near-totally redacted documents. (Quale Declaration, ¶¶ 10, 19.) While Quale explains the law pertaining to

exemptions three and five quite extensively (Quale ¶¶ 11, 15-17), she makes no effort to indicate exactly why each document was withheld. Rather, she quickly and without detail states what is contained in the documents. The Keller declaration, primarily responsible for detailing the search itself, is equally lacking. Most notably, it makes no attempt to explain why the original search failed to uncover "all documents" responsive to plaintiff's request and why it took litigation to uncover ninety-five pages of additional documents responsive to a request that, to IRS personnel responsible for conducting the search, "appeared too vague" and was to be "closed as imperfect." (Keller Declaration, ¶¶ 12-13.) Agency declarations that are non-detailed and conclusory are insufficient to satisfy the government's responsibilities pursuant to FOIA and warrant discovery. *See Simmons*, 796 F.2d at 711-12 ("[t]he agency's affidavits, naturally, must be 'relatively detailed' and nonconclusory and must be submitted in good faith"); *Fiduccia v. United States Dept. of Justice*, 185 F.3d 1055, 1045 (9th Cir. 1999) (affidavits must describe "in *great* detail *exactly* what documents the IRS had and why it did not produce them").

Discovery is also appropriate here because of the conflict between Gerald Role's August 20 letter (producing bates labels 605-606) and Quale's declaration (claiming to withhold same). Such conflict creates ambiguities which serve to undermine the IRS's credibility in responding to FOIA requests and warrant discovery. *See Porter v. United States Dept. of Justice*, 717 F.2d 787, 792-93 (3d Cir. 1983) (ambiguities between redacted papers and agency affidavits warranted discovery).

Finally, as evidenced by the Keller declaration, the IRS utterly failed to conduct an adequate search for records. It is well-established that "an agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested."

11

*Campbell v. United States Dept. of Justice*, 193 F. Supp. 2d 29, 35 (D.D.C. 2001) (*quoting Campbell v. United States Dept. of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998)). Here, Keller admits her original search was "limited to the information contained in the Kirbys' individual files." (Keller Declaration, ¶ 7.) No explanation is offered as to the reason her initial search was so limited. Further, though Keller, upon commencement of the litigation, did expand her search to the Office of Tax Shelter Analysis and four additional revenue agents (Keller Declaration, ¶¶ 12, 16), the search clearly remained inadequate. Most notably, she did not indicate that she contacted Larry Weinger, who coordinated a team of agents (none of whom were apparently contacted either) assigned to review the alleged "abusive transactions." Such an inadequate search is surely grounds for discovery. *See Campbell*, 193 F. Supp. 2d at 36 (granting discovery based on an inadequate government search for documents).

Discovery is clearly warranted here, as the IRS has submitted contradictory declarations completely lacking in specificity and detail. Further, the declarations reveal an inadequate responsive search for documents. Without discovery, plaintiffs will have no way to ensure their rights under FOIA are protected. The government has remained steadfast in its refusal to participate in *any* discovery in this case as well as in all of the petitions to quash summonses pending throughout the country, and plaintiff's most recent entreaty to reconsider this position (by e-mail dated November 6, 2007 from Paul Kozacky to Gerald Role) remains unanswered.

WHEREFORE, for the foregoing reasons, plaintiff requests that the government be ordered to produce a *Vaughn* index and comply with all overdue discovery (including depositions

that might be indicated from its interrogatory answers), and that the Court adjust the summary judgment briefing schedule accordingly.

| | |
|---|---|
| Dated: November 8, 2007. | Respectfully submitted,<br><br>KOZACKY & WEITZEL, P.C.<br><br>s/ Paul J. Kozacky<br>By: _____<br>One of its Attorneys |

Paul J. Kozacky (IL ARDC# 6188031)
Jerome R. Weitzel (IL ARDC# 6217032)
John M. Sheldon (IL ARDC# 6256666)
KOZACKY & WEITZEL, P.C.
55 West Monroe Street, Suite 2450
Chicago, Illinois 60603
(312) 696-0900
Firm No. 41950